IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL H. SUTER,                                    )
                                                  )
      Plaintiff,                                 )
                                                  )
v.                                                )     **2:05cv123**
                                                  )     **Electronic Filing**
PENNSYLVANIA STATE                                )
REPRESENTATIVE THOMAS C.                          )
PETRONE and PITTSBURGH POLICE                     )
OFFICER ANTHONY HILDEBRAND,                       )
                                                  )
      Defendant.                                 )

## OPINION

CERCONE, D.J.

      Plaintiff commenced this action on February 2, 2005, seeking redress for personal injury allegedly arising from the violation of his civil rights. Presently before the court is Defendant Petrone's (hereinafter "Defendant") motion to dismiss on the grounds of: defective service; statute of limitations; absolute legislative or qualified immunity; and failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be granted in part and denied in part.

      It is well settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Dismissal of a complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). The question is not whether the plaintiff will ultimately prevail; instead, it is whether the plaintiff can

prove any set of facts consistent with the averments of the complaint which would show the plaintiff is entitled to relief. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Under this standard a complaint will be deemed sufficient if it adequately puts the defendant on notice of the essential elements of a cause of action. Nami, 82 F.3d at 66.

Plaintiff is a resident of West Wood, Pennsylvania, and essentially alleges that he was a victim of Defendant initiating malicious criminal proceedings against him and excluding him from public hearings in retaliation for Plaintiff's exercising his First Amendment rights. Defendant is the duly elected State Representative for the Twenty-Seventh Legislative District of the Pennsylvania House of Representatives, which includes portions of Allegheny County. Defendant also resides in West Wood, which is part of the Twenty-Seventh District. Throughout 2002, Plaintiff repeatedly contacted Defendant regarding urban blight in the West Wood neighborhood. Plaintiff's First Amended Complaint at ¶ 5-32. When Defendant failed to remedy the situation, Plaintiff displayed a critical sign in the City-County Building and subsequently picketed in front of Defendant's state office building. Id. at ¶ 35-39.

Plaintiff subsequently approached Defendant at a School meeting on April 16, 2002, and the two exchanged words. Id. at ¶ 56-58. Defendant then filed simple assault, stalking and harassment charges against Plaintiff based on the above-stated encounter, and Plaintiff was arrested on May 17, 2002. Id. at ¶ 72, 99. At trial, Defendant testified that Plaintiff had neither threatened nor touched him during the April 16, 2002, incident. Thus, the simple assault charges against Plaintiff were dismissed. The remaining charges were dismissed on February 3, 2003, after Defendant failed to provide the Prosecution with any evidence to support the harassment charge. Id. at ¶ 185. Plaintiff avers that he suffered medical and emotional harm, including detriment to his marriage, and incurred attorney's fees as a result of the false charges filed against him. Id. at ¶ 189-193.

Plaintiff and Defendant had no further contact until November 5, 2004, when Plaintiff attended a hearing presented by the Pennsylvania House of Urban Affairs Committee at the

David L. Lawrence Convention Center in Pittsburgh. *Id.* at ¶ 194. According to Plaintiff, Defendant initially prevented Plaintiff from entering the meeting. *Id.* at ¶ 196-201. After Plaintiff walked by Defendant summoned a security guard and the Pittsburgh Police to escort Plaintiff from the forum. Defendant informed security that a restraining order prohibited Plaintiff from being in close proximity to Defendant. *Id.* at ¶ 202. Plaintiff denied that such an order existed, and upon further verification, the security manager confirmed Plaintiff's assertion and allowed him to re-enter. *Id.* at ¶ 204. Plaintiff asserts his preclusion was publicly humiliating and harassing, and, because it was in retaliation for his previous speech, violated his First Amendment rights. *Id.* at ¶ 206.

Defendant contends the complaint against him should be dismissed because service of the complaint was defective, the complaint fails to state a claim on which relief can be granted, any claim advanced is barred by the statute of limitations, and Defendant enjoys absolute legislative and qualified immunity in any event. We address these claims seriatim.

I.   Insufficient Service

Defendant maintains that there was defective service of process. Although there was a typographical error on Plaintiff's certificate of service, Defendant still received the complaint in the proper and usual manner. Defendant does not deny notice, nor has he demonstrated undue prejudice as a result of the misprint on Plaintiff's certificate of service. *Resource Ventures Inc., v. Resources Management Intern., Inc.* 42 F. Supp.2d 423, 429 (1999). A mistake such as this does not warrant dismissal. *Id.*

II.   Statute of Limitations

Defendant next asserts the statute of limitations bars Plaintiff's claims. In actions arising under 42 U.S. § 1983, federal courts apply the forum state's statute of limitations for personal injury. *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998). Pennsylvania's statute of limitations in personal injury cases is two years. 42 Pa. Cons. Stat. Ann. § 5524. Such claims accrue when the plaintiff knew or had reason to know of the

injury on which the action is based. *Sameric,* 142 F.3d at 599. *See also de Botton v. Marple Township,* 689 F. Supp. 477, 480 (E.D. Pa. 1988). Under Pennsylvania law, "a party may commence an action, and toll the statute of limitations by filing with the prothonotary any of three forms of service: a praecipe for writ of summons; a complaint; or an agreement for amicable action". Pa.R.Civ.P. 1007; *Wible v. Apanowicz,* 452 A.2d 545, 546 (Pa. Super. 1982).

Plaintiff's complaint essentially advances two claims: a malicious prosecution claim and a First Amendment retaliation claim. To establish a Fourth Amendment claim for malicious prosecution, the criminal proceeding initiated by the defendant must have ended in the plaintiff's favor. *Merkle v. Upper Dublin School District,* 211 F.3d 782, 791 (2000). *See Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir. 1996). As such, "the statute of limitations for malicious prosecution begins to run on the date the proceedings terminated favorably to the accused." *Cap v. K-Mart Discount Stores, Inc.,* 515 A.2d 52, 53 (Pa. Super. 1986). *See also Wilkenson v. Ellis,* 484 F.Supp. 1072 (E.D. Pa. 1980); *Kedra v. City of Philadelphia,* 454 F.Supp. 652 (E.D. Pa. 1978); *Sachs v. Levy,* 216 F.Supp. 44 (E.D. Pa. 1963); *Sicola v. First National Bank of Altoona,* 170 A.2d 584 (1961). Here, the charges against Plaintiff were dismissed on February 3, 2003. Plaintiff's First Amended Complaint at ¶ 185. Plaintiff thus had until February 3, 2005, to commence his action. He did so, filling this action on February 2, 2005. Therefore, this claim is not time barred.

Plaintiff's First Amendment retaliation claim emanates from the events of November 5, 2004, when Defendant sought to preclude Plaintiff's entrance to the House of Urban Affairs Committee hearing. *Id.* at ¶ 194. This claim was filed within the applicable two-year limitations period as well. Because Plaintiff's malicious prosecution and First Amendment retaliation claims were commenced in a timely manner, Defendant's request for dismissal based on the statute of limitations must be denied.

  III.  Immunity

Defendant claims entitlement to absolute legislative, or, in the alternative, qualified

immunity.

     A.     Absolute Legislative Immunity

In *Tenney v. Brandhove,* the Supreme Court held that state legislators have absolute immunity when they act "in a field where legislators traditionally have power to act." *Tenney v. Brandhove,* 314 U.S. 367, 379 (1951). The Court reaffirmed absolute legislative immunity in *Bogan v. Scott-Harris,* where it extended the doctrine to local legislators as well. *Bogan v. Scott-Harris,* 523 U.S. 44, 49 (1998). However, the Court cautioned that "legislative immunity is limited to legislative acts." *Brown v. Smythe,* 1990 WL 180987, 2 (E.D. Pa. 1990). Defendant's behavior as related to Plaintiff's malicious prosecution claim fails to qualify, because his actions were not within the scope of activity protected by immunity. *Ryan v. Burlington County,* 889 F.2d 1286, 1290 (3d. Cir. 1989). Here, the conduct of which Plaintiff complains took place outside the "presence and scope" of Defendant's function as the State Representative of the 27th Legislative District. *See Johnson v. City of Chester,* 10 F. Supp.2d 482, 488 (E.D. Pa. 1998) (denying absolute legislative immunity when the actions complained of took place outside the "presence and scope" of the defendant's legislative function). Although Plaintiff initially contacted Defendant in his legislative capacity, Defendant's subsequent decision to press criminal charges against Plaintiff and the actions related thereto did not pertain to Defendant's legislative business.

Moreover, although the House Urban Affairs Committee hearing may qualify as a "legislative proceeding", Defendant's behavior at this event was not related to the development of legislation. *Compare Beverly Enterprises v. Trump,* 1 F. Supp.2d 489, 493 (W.D. Pa. 1998). Defendant purportedly attempted to bar Plaintiff's admittance to the hearing, and falsely informed a security guard that a restraining order had been issued against Plaintiff. Plaintiff's First Amended Complaint at ¶¶ 196, 202. At best, Defendant's refusal to admit Plaintiff is "administrative, executive, or managerial in nature," and therefore "not the object of absolute immunity." *Aitchison v. Raffiani,* 708 F.2d 96, 99-100 (3d. Cir. 1983). *See also Brown v.*

*Smythe*, 1990 WL 180987 at 2. Defendant's false allegations of a restraining order cannot be construed as a legislative act. Because none of Defendant's supposed actions were done in furtherance of a legislative goal, he is not entitled to absolute legislative immunity. Accordingly, Defendant's request that the First and Fourth Amendment claims be dismissed based on absolute legislative immunity must be denied.

    B.    Qualified Immunity

Defendant alternatively asserts entitlement to qualified immunity. Officers failing to attain absolute legislative immunity may be afforded qualified immunity. The Supreme Court clarified the test for qualified immunity in *Saucier v. Katz*, holding that such issues are to be resolved using a two-step inquiry. *Saucier v. Katz*, 553 U.S. 194 (2001). *See Altieri v. Evanko*, 2003 WL 22005716 at 14 (E.D. Pa. 2003). First, "the district court must determine whether the facts alleged, taken in the light most favorable to plaintiff, show the officers violated a constitutional right." *Saucier*, 553 U.S. at 201. *See also Altieri*, 2003 WL 22005716 at 14. Failure to establish a constitutional violation entitles the officer to qualified immunity, thereby ending the judicial inquiry. *Altieri*, 2003 WL 22005716 at 14. If however, such a violation is found, "the next step is to ask whether the constitutional right was clearly established." *Id.* In this context, the court must determine "whether the [official] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). *Springer v. Henry*, 2006 WL 121942 (3d. Cir. 2006).

    1.    Fourth Amendment Malicious Prosecution Claim

        a.    Constitutional Violation: Malicious Prosecution

To satisfy the initial prong of the qualified immunity test, Plaintiff must establish that his Fourth Amendment rights were violated by Defendant's filing of criminal charges against him. A plaintiff asserting a § 1983 malicious prosecution claim must demonstrate the following: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's

6

favor; ) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle,* 211 F.3d at 791 (2000). *See Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir. 1996). Additionally, Plaintiff must "demonstrate a deprivation of liberty consistent with the concept of 'liberty'." *Brockington,* 354 F.Supp.2d at 569. *(citing Gatter v. Zapille,* 67 F. Supp.2d 515, 521 (E.D. Pa. 1999)).

Plaintiff has advanced sufficient allegations to proceed with a claim for malicious prosecution. Individuals are regarded as having initiated a criminal proceeding if they "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Brockington,* 354 F. Supp. 2d at 569. Here, Defendant filed a criminal complaint charging Plaintiff with simple assault, stalking, and harassment by communications. Plaintiff's First Amended Complaint at ¶ 67, 88. These charges were based upon Defendant's testimony and the purported existence of answering machine tapes containing threatening messages from Plaintiff. *Id.* at ¶ 115, 185. However, Defendant later admitted that Plaintiff had not assaulted him, and repeatedly failed to produce the aforementioned tapes. With all reasonable inferences drawn in favor of Plaintiff, the statements provided to the Prosecution by Defendant could be proven to be false, and the first prong of the malicious prosecution claim is satisfied. *Brockington,* 354 F. Supp.2d at 570.

Second, the simple assault charges were dropped when Defendant testified at trial that Plaintiff had neither raised his voice nor pushed Defendant. Plaintiff's First Amended Complaint at ¶ 128. Defendant's failure to present the alleged tapes after four months resulted in the dismissal of the remaining charges on February 3, 2003. *Id.* at ¶ 185.

Plaintiff may also be able to prove that Defendant did not have probable cause to file the criminal complaint. *Brockington,* 354 F. Supp. 2d at 569. Taken in the light most favorable to Plaintiff, the allegations raise an inference that Defendant fabricated the assault and harassing messages. If Defendant knew that these statements were false, he lacked probable cause to

initiate criminal proceedings against Plaintiff. The record thus presents a sufficient basis to proceed with the malicious prosecution inquiry. *Id.*

Finally, Plaintiff may be able to prove that Defendant initiated the criminal charges against him for a malicious purpose. As the above-analysis suggests, Defendant may have intentionally lied about his encounters with Plaintiff. Therefore, "it is a natural conclusion that [Defendant] acted for a purpose other than bringing [Plaintiff] to justice." *Id.* at 570.

In light of the above, Plaintiff may be able to establish that he was deprived of his constitutional right to liberty. Prior to dismissal of the criminal charges, Plaintiff was arrested, detained, and required to attend certain legal proceedings. Plaintiff's First Amended Complaint at ¶ 72-91. The Third Circuit recognizes each of these as a "seizure" for malicious prosecution purposes, and thus Plaintiff can establish a deprivation of his right to liberty. *Brockington,* 354 F. Supp.2d, 569. *See also Gallo v. City of Philadelphia,* 161 F.3d 217, 223 (3d. Cir. 1998).

Therefore, with the averments viewed in the light most favorable to him, Plaintiff has adequately stated a malicious prosecution claim based on fabricated information supplied by a state actor and, as such, a violation of a constitutional right.

b.   Clearly Established Right

Because Plaintiff has adequately alleged the infringement of his Fourth Amendment rights, the court must assess whether a reasonable officer in Defendant's position could have believed there was any constitutional basis for the actions taken. *Springer,* 2006 WL at 9. Again, according to Plaintiff's averments, Defendant acknowledged lying about an assault during trial, and provided no explanation for his failure to disclose the twelve allegedly incriminating answering machine tapes. Viewed in the light most favorable to Plaintiff, it appears that the existence of the tapes was fabricated as well. Plaintiff's First Amended Complaint at ¶ 185. A reasonable officer could not believe making such statements to be constitutional, particularly where they form the basis of a criminal complaint. Furthermore, a reasonable officer in Defendant's position would have understood Plaintiff's inevitable detainment to be a seizure

governed by the Fourth Amendment. *Brockington,* 354 F.Supp.2d at 569. A reasonable officer would have understood that advancing false information in a criminal complaint in support of charges resulting in an arrest and detainment would create an unreasonable seizure of the person under the Fourth Amendment. *Cf., Franks v. Delaware,* 438 U.S. 154 (1978). Thus, the second step of the qualified immunity analysis must also be resolved in Plaintiff's favor. Accordingly, Plaintiff's Fourth Amendment claim is not barred by qualified immunity.

        2.     First Amendment Retaliation Claim

            a.     Constitutional Violation: First Amendment Retaliation

Satisfaction of prong one of the qualified immunity test centers on whether Plaintiff's First Amendment rights were violated by Defendant's allegedly retaliatory actions at the November 5, 2004, hearing. To establish that Defendant's behavior was in retaliation for First Amendment speech and therefore an infringement of a constitutional right, Plaintiff must prove: (1) he engaged in a protected activity; (2) the government responded in an adverse and retaliatory manner; and (3) there is a causal connection between the retaliatory behavior and the protected actions. *Anderson v. Davila,* 125 F.3d 148, 161 (3d. Cir. 1997). *See also Altieri,* 2003 WL 22005716 "[S]peech is a protected activity when it relates to any matter of political, social, or other concern to the community." *Id.* Plaintiff's critical comments and display regarding Defendant's failure to remedy urban blight in city neighborhoods is a matter of interest to the community, and as such, is protected activity. Next, Defendant's attempt to bar Plaintiff's entrance into the House Urban Affairs Committee Hearing and subsequent lie regarding the restraining order could be found to be adverse and retaliatory behavior. Finally, the protected speech must have been a "substantial" or "motivating" factor in the defendant's actions. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977). Based upon the chain of events described in the First Amended Complaint and viewed in the light most favorable to Plaintiff, it appears that the interactions between Plaintiff and Defendant became increasingly hostile after Plaintiff voiced his criticisms of Defendant. Were it not for Plaintiff's

previous speech, it seems unlikely that Defendant would have gone to such great lengths to exclude Plaintiff from the hearing. As such, Plaintiff may be able to prove a causal connection between his protected activity and Defendant's subsequent adverse action. Thus the averment sufficiently raises a claim for retaliation of First Amendment rights, thereby establishing a violation of a constitutional right.

  b.  Clearly Established Right

  The second step in the inquiry is whether a reasonable officer in Defendant's position could have believed that there was any constitutional basis for misleading the security guard as to a restraining order in order to exclude Plaintiff from the hearing. *Springer,* 2006 WL at 9. Defendant has yet to provide any explanation for his alleged behavior. Taken in the light most favorable to Plaintiff, the current record raises the inference that the effort to bar Plaintiff's entrance was not "based on any reason other than retaliation for protected speech." *Id.* Certainly, a reasonable officer would not believe that acting in that manner would be acceptable under the United States Constitution. Therefore, the second step of the qualified immunity analysis is appropriately resolved in Plaintiff's favor and his First Amendment claim may proceed.

  For the reasons set forth above, Defendant's request for dismissal of Plaintiff's First and Fourth Amendment claims on the basis of qualified immunity must be denied.

  IV.  Failure to State a Claim on which Relief can be Granted

  A.  Fourth Amendment

  As is evident from the above discussion, Plaintiff has sufficiently stated a Fourth Amendment malicious prosecution claim. To re-iterate, a malicious prosecution claim is established by showing: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." *Merkle,* 211 F.3d at 791 (2000). *See Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.

1996). Additionally, Plaintiff must "demonstrate a deprivation of liberty consistent with the concept of 'liberty'." *Brockington,* 354 F.Supp.2d at 569. *Citing Gatter v. Zapille,* 67 F.Supp.2d 515, 521 (E.D. Pa. 1999).

The above-analysis indicates Plaintiff sufficiently pled facts to support each element of a malicious prosecution claim. Taken in the light most favorable to Plaintiff, the averments suggest Defendant knowingly initiated a criminal prosecution with false information. Those proceedings ended in Plaintiff's favor. Furthermore, the existence of probable cause is dependent upon whether Defendant fabricated the facts on which the arrest warrant was based. Under these circumstances, Defendant could not be found to have acted with the intent of bringing Plaintiff to justice. The proceedings initiated by Defendant also resulted in Plaintiff being arrested, detained, and required to attend future court proceedings. Thus Plaintiff has sufficiently stated a Fourth Amendment malicious prosecution claim.

B.   First Amendment

As is discussed above, Plaintiff has also adequately raised a First Amendment retaliation claim. A First Amendment retaliation claim requires a showing that: (1) Plaintiff engaged in a protected activity; (2) the government responded in an adverse and retaliatory manner; and (3) there is a causal connection between the retaliatory behavior and the protected actions. *Anderson,* 125 F.3d at 161. Plaintiff's criticisms of Defendant qualify as protected speech. Defendant's subsequent efforts to preclude Plaintiff's entrance into the House Urban Affairs Committee Hearing may amount to retaliatory behavior, and appear to have been brought about by Plaintiff's prior criticisms of Defendant. Therefore, Plaintiff has sufficiently stated a First Amendment claim on which relief can be granted.

C.   Fourteenth Amendment

In *Graham v. Connor,* the United States Supreme Court explained that when there is "an explicit textual source of constitutional protection against [a particular type of] intrusive governmental conduct, that Amendment, not the more generalized protection of 'substantive due

process,' must be the guide for analyzing" whether liability exists. 490 U.S. 386, 395 (1985). Here, Plaintiff's claims are "covered by" the First and Fourth Amendments, and thus a substantive due process analysis is "inappropriate." *See Torres v. McLaughlin,* 163 F.3d 169, 179 (1998). (*citing County of Sacramento v. Lewis,* 523 U.S. 833 (1998) (*quoting United States v. Lanier,* 520 U.S. 259 (1997)). Plaintiff's Fourteenth Amendment claims consequently must be dismissed.

For the reasons set forth above, Defendant's motion to dismiss will be granted in part and denied in part. An appropriate order will follow.

                                         /s/ David Stewart Cercone
                                         David Stewart Cercone
                                         United States District Judge

Date: March 14, 2006

cc:    Erik M. Yurkovich, Esquire
        Pine Creek Professional Buildings
        207 Pine Creek Road
        Building 1, Suite 201
        Wexford, PA 15090

        Michael Patrick Edmiston, Esquire
        William Martin Sloane, Esquire
        David V. Vitale, Esquire
        Leonard Cowitch, Jr., Esquire
        Pennsylvania House of Representatives
        622 Main Capitol Building
        Harrisburg, PA 17120-2020